UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| Erin S., <br>     Plaintiff, <br><br> v. <br><br> Frank Bisignano, Commissioner, <br>     Social Security Administration, <br>     Defendant. | ) <br> ) <br> ) <br> ) <br> )    C.A. No. 1:25-cv-00290-AEM <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM AND ORDER**

AMY E. MOSES, United States Magistrate Judge.

Plaintiff Erin is 43 years old and suffers from severe impairments of bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), posttraumatic stress disorder ("PTSD"), and substance use disorder. ECF No. 8 at 24, 26, 39. The Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denied Erin's claims for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). *Id.* at 18-32.

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Erin is not disabled within the meaning of the Act.

    **I.**    **PROCEDURAL HISTORY**

Erin filed applications for SSDI and SSI on September 29, 2022. ECF No. 8 at 21. Her claims were denied initially on February 2, 2023 (*id.* at 65-80) and on reconsideration on July 5,

2023 (*id.* at 85-98). Erin requested an Administrative Hearing that was held on February 22, 2024 before the Administrative Law Judge, Ryan Vanda (the "ALJ"). *Id.* at 37-64. At the hearing, Erin was represented by counsel and testified, and Vocational Expert ("VE") Timothy Andenmatten testified as well. *Id.* The ALJ issued a decision unfavorable to Erin on April 17, 2024 (*id.* at 18-32) and the Appeals Council denied Erin's request for review on April 14, 2025 (*id.* at 5-9). Erin timely appealed by filing her Complaint on June 18, 2025 seeking to reverse the decision of the Commissioner. ECF No. 1. On November 10, 2025, Erin filed Plaintiff's Motion to Reverse the Decision of the Commissioner. ECF No. 12. On February 5, 2025, the Commissioner filed Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 16) and on February 18, 2026, Erin filed Plaintiff's Reply Memorandum (ECF No. 17).

## II.   STANDARD OF REVIEW

The Commissioner's findings as to any fact "shall be" conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The determination of substantiality is based upon an evaluation of the record as a whole. *Frustaglia v. Sec'y Health & Hum. Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); *Brown v. Apfel*, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), *aff'd*, 230 F.3d 1347 (1st Cir. 2000) (per curiam). The Court's role in reviewing the Commissioner's decision is limited. *Brown*, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. *Thomas P. v. Kijakazi*, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), *report and recommendation adopted by text order*, (D.R.I. Mar. 31, 2022). Where the Commissioner's decision is supported by substantial evidence, the

Court must affirm. *Tegan S. v. Saul*, 546 F. Supp. 3d 162, 168 (D.R.I. 2021); *Rodriguez Pagan v. Sec'y Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### III. ALJ DECISION

The ALJ follows a five-step process in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at Steps One through Four, and the Commissioner bears the burden at Step Five. *Wells v. Barnhart*, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

Here, at Step One, the ALJ determined that Erin had not worked at a level that rose to substantial gainful activity since the alleged onset date of October 19, 2019. ECF No. 8 at 24. At Step Two, the ALJ found that Erin's bipolar disorder, ADHD, PTSD, and substance use disorder were severe impairments. *Id.* At Step Three, the ALJ first found that Erin did not have an impairment or combination of impairments that met or medically equaled a Listing. *Id.* The ALJ then determined that Erin had the Residual Functional Capacity ("RFC")[1] to perform a full range of work at all exertional levels. *Id.* at 27. The RFC contained the following non-exertional limitations: Erin can carry out simple instructions; occasionally interact with supervisors, co-workers, and the public; and tolerate occasional changes in a routine work setting. *Id.*

At Step Four, the ALJ relied on the VE's testimony and considered Erin's RFC to determine that she is unable to perform any past relevant work as a cashier or fast-food worker. *Id.* at 30. At Step Five, the ALJ relied on the VE as well as Erin's age, education, work experience, and RFC to find that she could do a significant number of other jobs in the national economy. *Id.* at 31. The ALJ thus concluded that Erin is not disabled within the meaning of the Act. *Id.* at 32.

---

[1] RFC is "the most you can still do despite your limitations," considering "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

## IV. ANALYSIS

On appeal to this Court, Erin claims the ALJ erred as a matter of law by (A) failing to address that her case was reviewed by two different state agency consultants at the initial level of review, and (B) not accounting for her need for an emotional support animal in the RFC finding. ECF No. 12 at 2. The Commissioner moves to affirm the ALJ's decision, arguing that (A) the second state agency consultant at the initial level was a quality review that did not constitute a separate administrative medical finding and did not offer additional functional limitations or contradict the ALJ's decision, and (B) there is no evidence in the record of medical necessity for Erin's emotional support animal. ECF No. 16 at 1, 4.

### A. State Agency Consultants

State agency consultant Dr. Christopher Leveille, Ph.D. conducted the initial review of Erin's case on January 23, 2023 and found that she had limitations ranging from mild to moderate in a number of areas. *See* ECF No. 8 at 67-75. The "Findings of Fact and Analysis of Evidence" section of Dr. Leveille's opinion includes a "RI DDS QP REVIEW" by Dr. Susan Killenberg, M.D. dated January 26, 2023. *Id.* at 70. Dr. Killenberg's narrative states that she reviewed the case and agrees with the findings as written. *Id.* She briefly summarizes the evidence and concludes that there is no "area of marked functional limitation" and the "evidence is consistent with severe mental impairments associated with moderate functional limitations." *Id.*

In his decision, the ALJ deemed Dr. Leveille's opinion "partially persuasive." *Id.* at 29. The ALJ found that Dr. Leveille's findings were supported by the evidence he had before him at the time of his review but concluded that "post-assessment evidence is more consistent with a more restrictive residual functional capacity." *Id.* The ALJ ultimately formulated a stricter RFC, including limiting Erin to carrying out simple instructions where Dr. Leveille stated she could

4

carry out multi-step instructions. *Id.* at 27, 29, 70-75. The ALJ did not address Dr. Killenberg's QP review, which Erin now asserts is reversible error.

The Government represents that the QP review is "part of a quality review process conducted by the disability determination services office (DDS) in the State to ensure compliance with federal policies, and to ensure consistency in application of those policies at the state DDS level. It is not a separate administrative medical finding." ECF No. 16 at 4. It is not entirely clear to the Court what Dr. Killenberg's role in the initial review was, but in any event, she agreed with Dr. Leveille's opinion, and the ALJ ultimately formulated an RFC for Erin that was more restrictive than Dr. Leveille's recommendation. Erin does not argue that further limitations are necessary.[2] Thus, remand for further consideration of Dr. Killenberg's opinion would "amount to no more than an empty exercise." *See Ward v. Comm'r Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000); *see also Genelle D. v. Kijakazi*, C.A. No. 23-00075-MSM, 2023 WL 7647790, at *8 (D.R.I. Nov. 15, 2023) ("Since the ALJ ultimately adopted the more restrictive RFC . . . this is an exercise in futility for Plaintiff with no possible prejudice shown."), *report and recommendation adopted by text order*, (D.R.I. Jan. 30, 2024).

### B. Emotional Support Animal

The ALJ's decision acknowledges that Erin has a service animal only in the context of Erin's daily activities and functional limitations. *See* ECF No. 8 at 26, 27 (noting that Erin cares

---

[2] Erin argues that Dr. Killenberg erroneously stated that she "left the workforce in 2019 due to legal issues." ECF No. 12 at 10, *see* ECF No. 8 at 70. She further argues that Dr. Leveille's opinion is "tainted by this misunderstanding of the end of Erin's work" as evidenced by his finding that she can "maintain a regular work schedule." ECF No. 12 at 10, ECF No. 8 at 73. Given that Dr. Killenberg reviewed Dr. Leveille's findings after he had already rendered his opinion, and Erin's argument is that the Court did not then consider Dr. Killenberg's opinion, it is not clear to the Court how Dr. Killenberg's erroneous conclusion about why Erin left the workforce could have had any impact on the ALJ's RFC formulation.

for her service animal on a routine basis).  Erin asserts that the ALJ's failure to account for Erin's need for an emotional support animal in her RFC constitutes reversible error.  ECF No. 12 at 2.

Although there is no First Circuit authority requiring that an ALJ discuss the need for an emotional support animal or establishing criteria for when an emotional support animal must be included in the RFC, "other courts have found that the use of a service dog must be medically necessary to be considered in an RFC assessment." *McGehee v. Berryhill*, 386 F. Supp. 3d 80, 87 (D. Mass. 2019) (citing *Santos v. Colvin*, No. 3:12-cv-05827-KLS, 2013 WL 5176846, at *2, 6 (W.D. Wash. Sept. 12, 2013) (finding that where "there is at least some evidence in the record that plaintiff's use of a service dog is medically necessary," the ALJ's failure to discuss that evidence in her decision "constitutes reversible error."); *see Payano v. Colvin*, No. 2:15-cv-00294-RFB-GWF, 2017 WL 4778593, at *4 (D. Nev. Oct. 23, 2017)).

Some courts have found error where—as here—the ALJ omitted any discussion of the service animal in the decision, but that the error is harmless if a claimant "did not meet his burden to show that the service animal was medically necessary." *Benjamin C. v. Comm'r Soc. Sec.*, 5:21-CV-872 (ATB), 2022 WL 16571699, at *11 (N.D.N.Y. Nov. 1, 2022); *see, e.g.*, *Natividad S. v. Comm'r Soc. Sec.*, No. 1:20-CV-01507, 2022 WL 2718511, at *12 (W.D.N.Y. July 13, 2022) ("The Court acknowledges that the ALJ may not have addressed or considered the dog, but ultimately, this error is harmless because there is insufficient evidence that the dog is medically necessary.").  Other courts have found no error in an ALJ's failure to consider or thoroughly discuss the need for an emotional support animal where a plaintiff fails to show medical necessity. *See, e.g.*, *Early v. Kijakazi*, No. 5:21-CV-00096-KDB, 2022 WL 2057467, at *5 (W.D.N.C. June 7, 2022); *Ashley D. v. Comm'r Soc. Sec.*, No. 22-11344, 2023 WL 5266849, at *10 (E.D. Mich.

July 17, 2023), *report and recommendation adopted*, No. 22-11344, 2023 WL 5251849 (E.D. Mich. Aug. 15, 2023).

In the absence of controlling guidance from the First Circuit, the Court declines to reach the issue of whether the ALJ committed a harmless error or no error at all in failing to discuss the need for an emotional support animal in his decision. What matters here is that remand on this issue is inappropriate and unnecessary because there is no evidence in the record that Plaintiff's emotional support animal is medically necessary. Plaintiff testified that she lives with her service dog and that she has had the service dog for four and a half years. ECF No. 8 at 43, 54. She testified that she has anxiety about leaving the house, and if she is not with somebody— "especially with my dog"—then she just feels "like something's going to happen." *Id.* at 53. She did not testify further as to the emotional, medical, or vocational benefit of her emotional support animal.

Plaintiff also stated in her function reports that her boyfriend and service dog accompany her on outings and "I take my dog with me everywhere I go as a support animal." *Id.* at 229, 252. In response to a question about using assistive devices, she checked "glasses/contact lenses" and wrote in "emotional support animal (dog)," and in response to the question of "which of these were prescribed by a doctor," she wrote "glasses" and "pet." *Id.* at 254. There is, however, no prescription, letter, or documentation of any kind in the record from a treating physician or other individual stating that she requires an emotional support animal. *Cf. Payano*, 2017 WL 4778593, at *4 (finding letter from a psychiatrist recommending that claimant's dog be designated a service animal insufficient to establish that the service animal is necessary for work); *Tiffany B. v. Kijakazi*, No. 1:20-cv-02696-DLP-JMS, 2022 WL 224817, at *6 (S.D. Ind. Jan. 26, 2022) (finding letter from claimant's primary care provider in support of her need for a dog that failed to medically prescribe an emotional support animal or opine on the impact of one on claimant's ability to work

insufficient to establish medical necessity); *Trea N.L. v. O'Malley*, No. 4:23-cv-04064, 2025 WL 2429032, at *5-6 (S.D. Tex. Mar. 20, 2025) (finding a single letter from Advanced Practice Registered Nurse containing conclusory statement that a dog was medically necessary to mitigate claimant's emotional symptoms inconsistent with her treating history and insufficient to require including a service animal in the RFC).

Erin's medical records include very few references to her animals outside of the fact that caring for them is part of her daily activities. *See* ECF No. 8 at 424 ("Her cat and dog are providing emotional support."); *id.* at 580 ("The cat had eye surgery. Erin states these are emotional support animals that help her daughter and her in addition to being family pets."). And clinical notes from only two of Erin's numerous office visits at the Providence Center state that she brought her dog with her. *Id.* at 626, 699. While Erin's animals are clearly a source of great comfort and assistance to her and her family, there is nothing in the record to suggest that an emotional support animal is medically necessary or required for Erin to work. Remand is unwarranted on this issue.

## V.    CONCLUSION

For the reasons discussed herein, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) is DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 16) is GRANTED. The Clerk shall enter Final Judgment in favor of Defendant.

 /s/  Amy E. Moses
AMY E. MOSES
United States Magistrate Judge

March 10, 2026